**Terry L. GROVES and Elizabeth Groves, Parents of Terry L. Groves, II, and MaryBeth Ellen Groves, by her next friend Terry L. Groves, Appellants (Plaintiffs below),**

v.

**Jacqueline TAYLOR, Indiana State Police, and the State of Indiana, Appellees (Defendants below).**

No. 14S01–0006–CV–358.

Supreme Court of Indiana.

June 7, 2000.

Frederick N. Hadley, W. Scott Montross, Townsend & Montross, Indianapolis, Indiana, Attorneys for Appellants.

Jeffrey A. Modisett, Attorney General of Indiana, Carol A. Nemeth, J.T. Whitehead, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellees.

Stephen R. Pennell, Ann Marie Waldron, Stuart & Branigan, Lafayette, Indiana, James D. Johnson, Mattingly, Rudolph, Fine & Porter, L.L.P., Evansville, Indiana, Attorneys for Amicus Curiae the Defense Trial Counsel of Indiana.

SULLIVAN, Justice.

While standing in her driveway, plaintiff MaryBeth Groves heard the loud "pop" of a vehicle fatally striking her brother and turned to observe his body as it rolled off the highway. She appeals lower court determinations disallowing her pursuit of mental trauma damages under the modified impact rule. Finding sufficient direct involvement, we hold that the plaintiff may present her mental trauma claim to a jury.

### Background

A summary of the facts most favorable to the judgment shows that on August 29, 1994, eight-year-old MaryBeth and her six-year-old brother, Terry, walked down the driveway of their home, which was located on State Road 58. MaryBeth watched as her brother crossed the highway towards the mailbox. As Terry reached to check the mail, MaryBeth turned and began walking back toward the house. Suddenly, MaryBeth heard a "big pop." She turned to see what had happened and saw her brother's body as it rolled off of the highway. A police vehicle had just struck Terry. The driver immediately turned around and went back to the accident scene. MaryBeth was frightened as the police vehicle sped toward her and she turned and ran to get her mother.

Terry L. Groves and Elizabeth Groves, as parents of Terry L. Groves, II, deceased, and MaryBeth, by her next friend Terry L. Groves, filed a personal injury/wrongful death action against the State.[1] Mr. and Mrs. Groves alleged that Trooper Taylor negligently caused the death of their son. MaryBeth alleged that she suffered emotional distress as a result of witnessing the negligent accident that caused her brother's death. The State filed a motion for partial summary judgment seeking judgment as a matter of law on MaryBeth's claim for negligent infliction of emotional distress. In its motion, the State alleged that because the undisputed facts showed that MaryBeth did not suffer "any direct physical impact as a result of the accident involving her brother," partial summary judgment was appropriate under the rule established in *Shuamber v. Henderson*, 579 N.E.2d 452 (Ind. 1991). Following a hearing, the trial court entered partial summary judgment in favor of the State.

The Court of Appeals affirmed. *Groves v. Taylor*, 711 N.E.2d 861 (Ind.Ct.App. 1999). Judge Kirsch wrote separately to "note that traumatic events can have severe, debilitating and foreseeable emotional effect even if not accompanied by physical injury, a direct impact or a direct involvement." *Id.* at 864 (Kirsch, J., concurring).

### Discussion

#### I

In *Shuamber v. Henderson*, 579 N.E.2d 452 (Ind.1991), we set forth the rule for when a person who witnesses a physical injury negligently inflicted on another is entitled to recover for emotional distress. There we said:

> When ... a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, we hold that such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma

---

1. Ind.Code § 9–21–1–8 (1993) provides that persons who drive an authorized emergency vehicle, such as a police car, are not relieved from the duty to drive "with due regard for the safety of all persons," even though such drivers may disobey certain rules of the road. *See also Quakenbush v. Lackey*, 622 N.E.2d 1284, 1290 (Ind.1993).

arises out of or accompanies any physical injury to the plaintiff.

*Id.* at 456.

In *Conder v. Wood,* 716 N.E.2d 432 (Ind. 1999), we applied the *Shuamber* rule for the first time. In that case, a truck had hit and knocked down plaintiff Wood's companion. Wood pounded on the side of the truck in a frantic attempt to get the driver to stop before the truck crushed her companion. In finding that Wood sustained the requisite "direct impact" under *Shuamber* to maintain an action for negligent infliction of emotional distress, we said:

[I]n *Shuamber,* we recognized the diminished significance of contemporaneous physical injuries in identifying legitimate claims of emotional trauma from the mere spurious. Rather, "direct impact" is properly understood as the requisite measure of "direct involvement" in the incident giving rise to the emotional trauma. Viewed in this context, we find that it matters little how the physical impact occurs, so long as that impact arises from the plaintiff's direct involvement in the tortfeasor's negligent conduct.

*Id.* at 435; *see also Alexander v. Scheid,* 726 N.E.2d 272, 283–84 (Ind.2000).

In the present case, it is undisputed that the plaintiff did not suffer the kind of direct impact required by *Shuamber* to recover as a bystander for emotional distress. However, as the foregoing passage from *Conder* makes clear, the reason for requiring direct involvement is to be able to distinguish legitimate claims of emotional trauma from the mere spurious. The value of requiring "direct impact" is that it provides clear and unambiguous evidence that the plaintiff was so directly involved in the incident giving rise to the emotional trauma that it is unlikely that the claim is merely spurious.

Given that the prevention of merely spurious claims is the rationale for the *Shuamber* rule, logic dictates that there may well be circumstances where, while the plaintiff does not sustain a direct impact, the plaintiff is sufficiently directly involved in the incident giving rise to the emotional trauma that we are able to distinguish legitimate claims from the mere spurious.

Not long ago, the Wisconsin Supreme Court faced the same question. In *Bowen v. Lumbermens Mut. Cas. Co.,* 183 Wis.2d 627, 517 N.W.2d 432 (1994), a mother sought damages for the mental trauma she suffered after witnessing the gruesome aftermath of the defendant negligently colliding with her fourteen-year-old son who was riding his bicycle.[2] *Id.* at 435. The court's decision, authored by now-Chief Justice Shirley Abrahamson, observed that "[h]istorically, the tort of negligent infliction of emotional distress has raised two concerns: (1) establishing the authenticity of the claim and (2) ensuring fairness of the financial burden placed upon a defendant whose conduct was negligent." *Id.* at 443. The court proceeded to analyze these concerns in the context of negligent infliction of emotional distress on a bystander and concluded that "three factors, taken together, help assure that the claim in this case is genuine [and] that allowing recovery is not likely to place an unreasonable burden upon the defendant." *Id.* at 444. These factors were that the victim was seriously injured, that the plaintiff was the victim's mother, and that the plaintiff witnessed an extraordinary event. *Id.* Much like the Wisconsin court, we believe these three considerations, taken together, provide a legitimate alternate basis for distinguishing legitimate claims of emotional distress from the mere spurious.

First, "[a] fatal injury or a physical injury that a reasonable person would view as serious can be expected to cause severe distress to a bystander. Less serious

---

**2.** Wisconsin law required that the plaintiff's "emotional distress [have] an accompanying or resulting physical injury." *Bowen,* 517 N.W.2d at 441.

physical harm to a victim would not ordinarily result in severe emotional distress to a reasonable bystander of average sensitivity." *Id.*

■ Second, emotional distress may accompany the death or severe injury of persons such as friends, acquaintances, or passersby. But the emotional trauma that occurs when one witnesses the death or severe injury of a loved one with a relationship to the plaintiff analogous to "a spouse, parent, child, grandparent, grandchild, or sibling is unique in human experience and such harm to a plaintiff's emotional tranquility is so serious and compelling as to warrant compensation." *Id.* (footnote omitted). Limiting recovery to those plaintiffs who have the specified relationships with the victim acknowledges the special quality of such relationships yet places a reasonable limit on the liability of the tortfeasor. *Id.*

■ Third, "[w]itnessing either an incident causing death or serious injury or the gruesome aftermath of such an event minutes after it occurs is an extraordinary experience, distinct from the experience of learning of a" loved one's death or severe injury by indirect means. *Id.* at 444–45.

■ We therefore hold that where the direct impact test is not met, a bystander may nevertheless establish "direct involvement" by proving that the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortuous conduct.

## II

■ Although MaryBeth was not the primary victim of the alleged negligent conduct, she witnessed the gruesome aftermath of her younger brother being struck and violently killed by a speeding automobile. She was close enough to hear the "pop" of the impact and observe her broth-er's body as it rolled off the highway after being struck.

■ In order for a bystander to recover for emotional distress resulting from physical injury negligently inflicted on another, a plaintiff must sustain emotional trauma, which is serious in nature and of a kind and extent normally expected to occur in a reasonable person. *Shuamber,* 579 N.E.2d at 456. In addition, the plaintiff must have had sufficient direct involvement with the injury-causing event that legitimate claims of emotional trauma can be distinguished from the mere spurious. *Conder,* 716 N.E.2d at 435. In both *Shuamber* and *Conder,* this latter requirement was met by the plaintiff sustaining a "direct impact." But MaryBeth did not suffer a "direct impact" in this case. We turn instead to the alternate criteria of direct involvement adopted today.

First, the injury suffered by Terry was fatal and so meets the criteria of severity. Second, MaryBeth was Terry's sister and so the relationship test is also satisfied. Third and finally, MaryBeth witnessed a portion of the injury-producing event, specifically her brother's body as it rolled off the highway after being struck, resulting in his death. The criteria of observing the traumatic event are also met.

We therefore find that MaryBeth's allegations have met the alternate criteria of direct involvement and may proceed. Defendants are not entitled to judgment as a matter of law.

### Conclusion

We therefore grant transfer, vacate the opinion of the Court of Appeals, vacate the trial court's grant of summary judgment, and remand to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, BOEHM and RUCKER, JJ., concur.