Terrie Lynn ROSIN, surviving spouse, Christopher Michael Rosin and Michael David Rosin, minors, by their Guardian ad Litem, Paul J. Scoptur, Plaintiffs,

Bradley Joseph ROSIN, a minor, by his Guardian ad Litem, Paul J. Scopter, Plaintiff-Appellant,†

ESTATE OF Cletus J. LEGRAVE, Dorothy J. LeGrave, Beth LeGrave and Evan LeGrave, by his Guardian ad Litem, Bruce R. Bachhuber, Intervening Plaintiffs,

v.

FORT HOWARD CORPORATION and United States Fidelity and Guaranty Company, Defendants-Third-Party Plaintiffs,

TRANSPORATION INSURANCE COMPANY, Defendant,

v.

CALGON CORPORATION and General Accident Insurance Company, Defendants-Third-Party Plaintiffs-Third-Party Defendants-Respondents,

v.

BABCOCK & WILCOX COMPANY and XYZ Insurance Company, Third-Party Defendants.

Court of Appeals

*No. 98–0861. Submitted on briefs September 22, 1998.—Decided October 13, 1998.*

(Also reported in 588 N.W.2d 58.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Timothy J. Aiken* and *James C. Gallanis* of *Aiken & Scoptur, S.C.* of Milwaukee.

On behalf of the defendants-third-party plaintiffs-respondents-third-party defendants-respondents, Calgon Corporation and General Accident Insurance Company, the cause was submitted on the brief of *James S. Smith, Shawn M. Eichorst, Frederick J. Strampe* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J. Bradley Rosin, a minor, by his guardian ad litem, appeals a judgment dismissing his claim for negligent infliction of emotional distress against defendants Calgon Corporation and General Accident Insurance Company. Bradley argues that under *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994), viewing a newspaper photograph of his deceased father's covered body being removed from an accident scene was an "extraordinary circumstance" and that public policy considerations therefore do not preclude liability for his severe emotional distress. We reject his arguments and affirm.

The parties stipulated to the following facts. Bradley Rosin was nine years old on April 22, 1996, when his father was killed in a 9 p.m. explosion at the Fort Howard Corporation power plant in Green Bay. Bradley neither witnessed his father's death nor was

367

present at the accident scene immediately thereafter. On April 23, at approximately 7:30 a.m., Bradley's mother informed him of his father's death. Then, at some point between 2 and 3 p.m. on April 23, Bradley saw a photograph on the front page of the Green Bay Press-Gazette showing his father's body, covered by a sheet, being removed from the accident scene. Bradley's treating psychologist offered the opinion that viewing this photograph is a cause of Bradley's ongoing extraordinary emotional and psychological distress.

Relying on *Bowen's* public policy factors, the defendants filed a motion to dismiss Bradley's claim for negligent infliction of emotional distress for failure to state a claim upon which relief can be granted. Finding no sufficient link between the defendants' conduct and Bradley's emotional distress, the trial court granted the motion. Bradley then filed this appeal.

*Bowen* provides the framework for our analysis. Under *Bowen*, any plaintiff claiming negligent infliction of emotional distress, including a bystander, must prove three elements, that the: (1) defendant's conduct fell below the applicable standard of care; (2) plaintiff suffered an injury; and (3) defendant's conduct was a cause-in-fact of the plaintiff's injury.[1] *Id.* at 632, 517 N.W.2d at 434. It is the finder of fact, not the court, that determines cause-in-fact. *Id.* However, a trial court or an appellate court may decide as a matter of law that public policy considerations, which are an aspect of legal cause, not cause-in-fact, require dismissal of a bystander's claim for negligent infliction of emotional

---

[1] In the bystander situation, the emotional distress must be severe. *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 652–53, 517 N.W.2d 432, 442–43 (1994). The parties here have stipulated that Bradley's emotional distress is severe.

distress. *Id.* at 654–55, 517 N.W.2d at 443. When a case presents public policy questions, the court may dismiss a claim on public policy grounds before trial, and this is especially appropriate if the facts are simple and clear. *Id.* at 655, 517 N.W.2d at 443. Here, the parties have stipulated to the facts; therefore, the question is whether, under the circumstances of this case, it contravenes public policy to permit Bradley to recover for his severe emotional distress.

■

Negligent infliction of emotional distress has historically raised two concerns, guaranteeing the genuineness of such claims and ensuring that the financial burden placed on a negligent defendant is fair. *Id.* at 655, 517 N.W.2d at 443. Collectively, three critical factors help guarantee the claim's genuineness and also help assure that allowing recovery will not unreasonably burden the defendant or contravene other public policy considerations.[2] *Id.* at 633, 656, 517 N.W.2d at 434–35, 444. First, the injury the victim suffered must have been fatal or severe. *Id.* at 633, 517 N.W.2d at 434–35. Second, the victim and the

---

[2] The six public policy considerations in the negligence context are whether: (1) the injury is too remote from the negligence; (2) the injury is wholly out of proportion to the negligent tortfeasor's culpability; (3) in retrospect it appears too extraordinary that the negligence should have brought about the harm; (4) allowing recovery would place an unreasonable burden on the negligent tortfeasor; (5) allowing recovery would be too likely to open the way for fraudulent claims; or (6) allowing recovery would enter a field that has no reasonable or just stopping point. *Bowen*, 183 Wis. 2d at 655–56, 517 N.W.2d at 443–44. In short, when it would shock society's conscience to impose liability, courts may preclude liability as a matter of law. *Id.*

bystander-plaintiff must be related as spouses, parent-child, grandparent-grandchild, or siblings. *Id.* Third, the bystander-plaintiff must have "observed an extraordinary event, namely the incident and injury or the scene soon after the incident with the injured victim at the scene." *Id.* The first two factors are met here; the injury to Bradley's father was fatal.

The issue becomes whether Bradley's viewing of a photograph was "an extraordinary event." Bradley argues that *Bowen* does not limit an extraordinary event to personal and contemporaneous observation of the injury or its aftermath and that he directly experienced the trauma of his father's death when he viewed the photograph. Contrary to Bradley's argument, however, *Bowen's* definition of an "extraordinary event" indeed turns on whether the bystander *observed* the incident causing death or serious injury soon after the event occurred or merely *learned* or was *informed* about the event through indirect means. *Id.* at 657–59, 517 N.W.2d at 444–45. After reviewing sixty years of the tort's development in Wisconsin, our supreme court carefully drew a line between direct (recoverable) and indirect (nonrecoverable) means:

> The tort of negligent infliction of emotional distress is not designed to compensate all emotional traumas of everyday life. All of us can expect at least once in our lives to be *informed* of the serious injury or death of a close family member such as a spouse, parent, child, grandparent, grandchild, or sibling, perhaps due to the negligence of another. Although the shock and grief growing out of such news is great, it is not compensable emotional distress under this tort action. The *distinction* between on the one hand *witnessing* the incident or the gruesome aftermath of a serious accident minutes after it occurs and on the other hand the experience of

> *learning* of the family member's death through *indirect means* is an appropriate place to draw the line between recoverable and non-recoverable claims.

*Id.* at 658, 517 N.W.2d at 445 (emphasis added; footnote omitted).

Thus, when the bystander directly witnesses the death or serious injury, severe emotional distress is recoverable, but when the bystander is indirectly informed, it is not recoverable. *See id.* Significantly, as the *Bowen* court reiterated throughout its decision, a bystander's recoverable damages arise from *observance* of the circumstances of the death or serious injury, either when the incident occurs or soon after. *Id.* at 658–60, 517 N.W.2d at 444–45.

Turning to the facts of our case, public policy precludes the defendants' liability for two reasons. First, as *Bowen* explains, there is a profound difference between observing an event and being informed of it. Bradley was *informed* of his father's death, first by his mother approximately ten-and-one-half hours after his father's death, and second by viewing the photograph approximately eighteen hours after his father's death. Both are indirect means under *Bowen*. Viewing this photograph eighteen hours after his father's death does not simulate Bradley's presence at the accident scene. We agree with the defendants that under *Bowen*, emotional distress in a bystander situation such as this occurs because an event is observed (witnessed) and therefore *experienced*. Given the supreme court's distinction between direct and indirect means, we cannot stretch *Bowen* to support Bradley's argument that in viewing a photograph, he directly experienced the event.

371

Second, *Bowen* requires that the bystander observe the incident or aftermath "soon after," that is, "minutes," after it occurs. *Id.* at 658–59, 660, 517 N.W.2d at 445–46. Bradley's alleged "observance" did not occur minutes after his father's death, but nearly eighteen hours later. Contrary to Bradley's assertion, under *Bowen*, viewing a photograph taken in the immediate aftermath of the fatal explosion does not transform his indirect discovery to an "observance" minutes after the fatal explosion. Further, our conclusion does not, as Bradley suggests, result from a "cook book" application of *Bowen*, but from applying the facts of this case to *Bowen's* framework.

Bradley argues, however, that *Bowen* does not require that a bystander personally and contemporaneously observe the victim's injury. Rather, he argues that the test is whether, under each case's facts, the circumstances of the plaintiff's discovery of the fatal injury were such that the discovery compounded the natural shock and grief of the victim's death. To support this argument, Bradley quotes the following passage from *Bowen*: "This tort reflects, *for example*, the intensity of emotional distress that can result from seeing the incident causing the serious injury or death *first·hand* or from coming upon the gruesome scene minutes later." *Id.* at 659, 517 N.W.2d at 445 (emphasis added). Bradley reasons that the "for example" language indicates that the supreme court did not intend to restrict extraordinary circumstances to those in which the plaintiff was personally present when the accident occurred or immediately thereafter. We disagree. As set forth above, *Bowen* requires personal and contemporaneous observation either of the victim's death or serious injury or the scene soon after the incident with the injured victim at the scene. *See id.* at 633,

517 N.W.2d at 435. This is not, as Bradley suggests, an overly restrictive reading of *Bowen*, but an accurate reading of the framework *Bowen* carefully set forth to guide claimants and courts. *See id.* at 652, 517 N.W.2d at 442.

In summary, we conclude that under the particular circumstances of this case, public policy precludes the defendants' liability because: (1) Bradley learned about his father's death through *indirect* means, first from his mother and then by viewing a newspaper photograph and therefore did not "observe" it; and (2) Bradley neither personally observed his father's death nor his father at the accident scene *soon after* the fatal explosion. We therefore affirm the judgment dismissing Bradley's bystander claim for negligent infliction of emotional distress.

*By the Court.*—Judgment affirmed.