## CORRINE BIERCEVICZ *v.* LIBERTY MUTUAL INSURANCE COMPANY

Superior Court, Judicial District of Waterbury
File No. CV-00-0160988S

Memorandum filed November 23, 2004

*Fitzpatrick, Mariano & Santos,* for the plaintiff.

*Holahan, Gumpper & Dowling,* for the defendant.

EVELEIGH, J. This matter concerns a personal injury action that was instituted on August 21, 2000. Corrine Biercevicz, the plaintiff, brings this uninsured motorist action against the defendant, Liberty Mutual Insurance

Company, asserting, inter alia, a claim for "[b]ystander [e]motional [d]istress" in the second count of her second revised complaint (complaint) dated October 6, 2004. The plaintiff claims damages for witnessing the death of her fiance, Scott Piscitelli. On November 1, 2004, the defendant filed a motion to strike the plaintiff's second count, claiming that the count was legally insufficient to establish a claim for bystander emotional distress wherein the injured victim was described as the plaintiff's fiance. On November 12, 2004, the plaintiff filed a brief in opposition to the defendant's motion, and the matter was argued before the court on November 22, 2004.

I

DISCUSSION

"'The purpose of a motion to strike is to test the legal sufficiency of the allegations of a pleading; it admits all facts well pleaded. . . . The role of the trial court [is] to examine the [complaint], construed in favor of the [plaintiff], to determine whether the [plaintiff has] stated a legally sufficient cause of action.' " (Citation omitted.) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997).

Viewing the facts in the light most favorable to the plaintiff, the complaint alleges that she and her fiance were passengers in a vehicle that was struck by an uninsured motorist. She alleges further that the collision was the fault of the uninsured operator and, as a result of the collision, she sustained personal injuries. In the second count of the complaint she alleges that her fiance suffered serious injuries in the accident, which subsequently resulted in his death. She alleges further

that she sustained serious emotional injury witnessing the injuries to her fiance.

In *Clohessy* v. *Bachelor*, 237 Conn. 31, 675 A.2d 852 (1996) (en banc), our Supreme Court first recognized a cause of action for bystander emotional distress. There were four essential elements to this tort that the court set forth. "To summarize, we conclude that a bystander may recover damages for emotional distress under the rule of reasonable foreseeability if the bystander satisfies the following conditions: (1) he or she is closely related to the injury victim . . . (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response." Id., 56.

In *Clohessy*, the Supreme Court held that the parent and sibling of a child killed in an accident could bring an action for bystander emotional distress. Id., 56–57. The court left for another day the question of what other relationships might also qualify. The issue before the court in the present action is whether the status of being a fiance is sufficient to meet the "closely related" requirement of *Clohessy*. The defendant does not question the existence of the other three *Clohessy* elements in this action.

The defendant argues that the requirement that one be "closely related" means that one who does not have a relationship by blood or marriage to the injury victim may not recover for emotional distress. It claims that those who are engaged to be married are not "related,"

and, as a result, that relationship does not qualify as one that will support a bystander emotional distress claim. The defendant notes that since *Clohessy*, neither our Supreme Court nor the Appellate Court have addressed the issue of what "other relationships" may qualify as being "closely related" so as to support a cause of action for bystander emotional distress. In support of its position, the defendant cites numerous out-of-state decisions in which parties have been denied the right to sue for bystander emotional distress unless they were related by blood or marriage. It is interesting to note that in *Clohessy*, our Supreme Court cited and relied on *Thing* v. *La Chusa*, 48 Cal. 3d 644, 771 P.2d 814, 257 Cal. Rptr. 865 (1989). In *Thing*, the California Supreme Court noted: "In most cases no justification exists for permitting recovery for [negligent infliction of emotional distress] by persons who are only distantly related to the injury victim. Absent exceptional circumstances, recovery should be limited to relatives residing in the same household, or parents, siblings, children and grandparents of the victim." Id., 668 n.10. The court in *Thing* further discussed the policy reasons for limiting, sometimes arbitrarily, the right to recover for bystander emotional distress, stating: "Similar reasoning justifies limiting recovery to persons closely related by blood or marriage since, in common experience, it is more likely that they will suffer a greater degree of emotional distress than a disinterested witness to negligently caused pain and suffering or death. Such limitations are indisputably arbitrary since it is foreseeable that in some cases unrelated persons have a relationship to the victim or are so affected by the traumatic event that they suffer equivalent emotional distress. As we have observed, however, drawing arbitrary lines is unavoidable if we are to limit liability and establish meaningful rules for application by litigants and lower courts. No policy supports extension of the right to

recover for [negligent infliction of emotional distress] to a larger class of plaintiffs." Id., 666.

Thus, the California Supreme Court reaffirmed in *Thing* its earlier ruling in *Elden* v. *Sheldon*, 46 Cal. 3d 267, 758 P.2d 582, 250 Cal. Rptr. 254 (1988), which held that the "closely related" prong of the elements required for a cause of action in bystander emotional distress was not met where the plaintiff alleged that "at the time of the accident, he had an unmarried cohabitation relationship with the decedent . . . which was both stable and significant and parallel to a marital relationship." (Internal quotation marks omitted.) Id., 269. The court in *Thing* discussed *Elden* and noted that there must be restrictions in allowing an action for bystander emotional distress because if the consequences of a negligent act are not limited, an intolerable burden is placed on society. A "bright line in this area of the law is essential." (Internal quotation marks omitted.) *Thing* v. *La Chusa*, supra, 48 Cal. 3d 664.

The defendant does acknowledge that there is a conflict in authority on this issue throughout the country. It cites two Connecticut Superior Court cases that have allowed the doctrine to extend to couples who are engaged, where it has been alleged that they are cohabiting. See *Izquierdo* v. *Ricitelli*, Superior Court, judicial district of New London, Docket No. 566731 (March 15, 2004) (36 Conn. L. Rptr. 698) (*Hon. D. Michael Hurley*, judge trial referee); *Miller* v. *Curtis*, Superior Court, judicial district of Hartford, Docket No. CV-99-0587266S (October 22, 1999) (25 Conn. L. Rptr. 565) (*Booth, J.*). The defendant further notes that a Connecticut Superior Court judge has refused to extend the doctrine in the case of a claimant who witnessed a friend's death allegedly caused by the defendant's negligence. See *Batista* v. *Backus*, Superior Court, judicial district of Waterbury, Docket No. CV-00-0159533 (November 27, 2000) (28 Conn. L. Rptr. 624) (*Rogers, J.*).

The plaintiff urges the court to adopt the reasoning of *Izquierdo* and *Miller*. In addition, she cites *Dunphy* v. *Gregor*, 136 N.J. 99, 642 A.2d 372 (1994), in which the New Jersey Supreme Court refused to follow the "closely related" restrictions imposed by the California Supreme Court. In *Dunphy*, the relationship prong of the emotional bystander test was whether "a marital or intimate, family relationship between the plaintiff and the injured person"; id., 103; existed, which is slightly different from the "closely related" prong adopted by our Supreme Court in *Clohessy*. In fact, in reaching its decision, our Supreme Court considered *Dunphy*, but chose instead to follow the reasoning of *Thing*.

This court is persuaded by the reasoning of the dissent in *Dunphy*. As noted there; see *Dunphy* v. *Gregor*, supra, 136 N.J. 115–23 (Garibaldi, J., dissenting); there can be no doubt that many couples who live together without formal marriage are bound by the same emotional ties as people who are married. The same principle may also apply to close friends, teachers and students, doctors and patients, and any number of human interpersonal relationships. The question for the court here is whether our Supreme Court intended for *Clohessy* to apply to some or all of these relationships. For instance, if our Supreme Court intended that engaged cohabitants be allowed to recover damages, as some lower courts have held, it can easily be argued that engaged couples who do not cohabit should be allowed to recover damages. Why not lifelong friends or close friends of a few years? What test does one use to determine who fits within the class and who does not?

Justice Garibaldi, in her dissent in *Dunphy*, opined that "[d]rawing the line at marriage conforms to the general expectation of society as reflected in the statutes . . . that spouses should be treated differently

than unmarried cohabitants." Id., 120 (Garibaldi, J., dissenting). Indeed, as in New Jersey, Connecticut does not recognize common-law marriage. Engaged couples are not recognized for the purposes of workers' compensation, social security benefits, welfare or inheritance by intestate succession. It is also noted that Connecticut would not allow an unmarried person to sue for loss of consortium, whether or not that person cohabited with the injured party. Justice Garibaldi reasoned that the majority in *Dunphy* had adopted an unworkable and ultimately unwise standard. Id., 122. She then suggested: "The majority's decision will open the door to more bystander claims because many people live together in 'significant other' relationships. The inquiry into whether a bystander has the requisite 'close, substantial, and enduring relationship' will require the courts and defendants to delve into the intimate details of claimants' lives. The proofs will undoubtedly deal with a couple's sexual fidelity, their commitment to one another measured in time intervals, their economic interconnectedness and interdependence, not to mention their estate plans. . . . The end result will be that courts will be forced to evaluate all sorts of personal relationships and necessarily assign to them a rank in some large hierarchy. Ranking relationships is not our role." (Citations omitted.) Id., 122–23.

*Clohessy* recognized that limits had to be established in circumscribing the class of people who could sue for bystander emotional distress. The court stated: "[I]t would be an entirely unreasonable burden on all human activity if the defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as all his friends. . . . With these considerations in mind,

and borrowing from the experience of other jurisdictions, we agree that specific limitations must be imposed upon the reasonable foreseeability rule. We recognize that those limitations, albeit somewhat arbitrary, are necessary in order not to leave the liability of a negligent defendant open to undue extension by the verdict of sympathetic juries, who under our system must define and apply any general rule to the facts of the case before them." (Citations omitted; internal quotation marks omitted.) *Clohessy* v. *Bachelor*, supra, 237 Conn. 50–51.

A cause of action for bystander emotional distress has been characterized by our Supreme Court as a form of third party liability. *Mendillo* v. *Board of Education*, 246 Conn. 456, 481–82, 717 A.2d 1177 (1998). In *Mendillo*, the Supreme Court declined to recognize claims asserted by minors for loss of parental consortium. In doing so, the court emphasized that imposing third party liability remained the exception rather than the rule and that the court was reluctant to recognize causes of action in tort that are based on third party liability in the absence of a special policy inquiry. Id. It is noteworthy that the court mentions *Clohessy* many times in that opinion. The court considered the policy considerations in its conclusion of the opinion and stated: "We conclude in the present case that the general rule of limiting the tortfeasor's liability to the person directly harmed should prevail. Although, in light of the minor plaintiff's arguments, the question is a close one, the balance of the policy considerations fails to establish the additional justification necessary to support recognition of a legal duty on the part of a tortfeasor to compensate the children of the person whom the tortfeasor has harmed directly for their loss of consortium with their parent." Id., 484–85.

*Mendillo* is instructive, by way of analogy, as an indication of the concern of our Supreme Court with the

expansion of any third party liability. If the court is unwilling to expand liability to children in a loss of consortium situation, it is difficult to imagine that the same court would allow expansion of liability to engaged couples who are not cohabiting.

## II

## CONCLUSION

On the basis of the foregoing, and the guidance of the Supreme Court in the cases cited, the court finds here that a claim for bystander emotional distress does not extend to a claim made by the plaintiff fiancee of the decedent, because she cannot satisfy the "closely related" requirement. It is necessary to set this limitation to avoid countless other litigants and extend liability on the part of negligent defendants. The extension of class would also result in an unworkable decision and unwarranted intrusion into the private lives of litigants. The defendant's motion to strike the second count of the complaint, therefore, is granted.