ATTORNEYS FOR APPELLANT
Stephen L. Williams
Terre Haute, Indiana

James Boswell
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE
Michael B. Langford
Lynne D. Lidke
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
DEFENSE TRIAL COUNSEL OF INDIANA
Donald B. Kite, Sr.
Carmel, Indiana

James D. Johnson
Evansville, Indiana

_____

# In the
# Indiana Supreme Court

_____

No. 94S00-0602-CQ-48

AMY SMITH,

*Appellant (Plaintiff below),*

v.

JAMES M. TONEY AND JOHN
CHRISTNER TRUCKING CO., INC.,

*Appellees (Defendants below).*

_____

From the United States District Court for the Southern District of Indiana
The Honorable Sarah Evans Barker, Judge
Cause No. 1:04-cv-0796-SEB-VSS

_____

On Certified Question

_____

**March 13, 2007**


**Boehm, Justice.**


Indiana law allows a claim for negligent infliction of emotional distress under some limited circumstances even if the plaintiff has suffered no physical injury or impact as a result of the

defendant's negligence.  We hold today that although a spouse may assert such a claim of negligent infliction of emotional distress a fiancée may not.  We also hold that such a claim requires that the plaintiff have learned of the incident by having witnessed the injury or the immediate gruesome aftermath.

**Facts and Procedural History**

The United States District Court for the Southern District of Indiana has certified to this Court the following questions:

> 1.  Under the test elaborated in <u>Groves v. Taylor</u> for bringing a bystander claim of negligent infliction of emotional distress, are the temporal and relationship determinations regarding whether a plaintiff "actually witnessed or came on the scene soon after the death of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling" issues of law or fact, or are they mixed questions of law and fact?

> 2.  If an issue of law, is a fiancée an "analogous" relationship as used in <u>Groves</u> and is "soon after the death of a loved one" a matter of time alone or also of circumstances?

The following facts are derived from the depositions and other evidence submitted to the federal court on the defendants' motion for summary judgment.  On the evening of June 6, 2003, Eli Welch and his fiancée Amy Smith fell asleep watching television at the Smith home.  At approximately 3:30 am, Smith awoke, woke up Welch, and told him he needed to go home.  Welch left, telling Smith that he would call her when he reached his house, and Smith fell back to sleep.  As Welch was driving westbound on Interstate 70 toward Plainfield, Indiana, his car collided with a tractor-trailer operated by James Toney on behalf of John Christner Trucking Company.  An emergency response team was dispatched to the scene of the accident at 3:53 am.  Welch was declared a fatality at 4:05 am.  According to the deposition of the captain of the response team, Welch's body was extricated from his vehicle between 5:50 and 5:55 am and immediately placed in a body bag.  The body bag was then moved to the coroner's vehicle.  The response team left the scene of the accident between 6:06 and 6:08 am.

Sometime around 5:30 am, Smith awoke and realized that Welch had not called her.  She called Welch's home and cell phone and received no response.  Smith left her parents' house at approximately 6:00 am, drove the route Welch normally took to his house, and came upon the

scene of the accident. She remembers seeing Welch's "smashed up" vehicle and police officers standing by. She slowed her car as she drove by the scene, but she did not stop or speak to anyone. Smith called Welch's sister's house at 6:14 am and spoke with Welch's brother-in-law. Smith testified that the call was immediately placed after she came upon the accident scene. Smith has no present recollection of seeing any part of Welch's body when she came upon the scene of the accident. She testified that Welch's brother-in-law told her that during their phone conversation she told him that she saw Welch's hand. Smith drove from the scene to Welch's sister house, where she learned of Welch's death before 7:07 am.

On April 22, 2004, Smith sued Toney and John Christner Trucking in Marion Superior Court, alleging severe emotional trauma and distress from the death of her fiancé. After the case was removed to the Southern District of Indiana on the basis of diversity jurisdiction, Toney and John Christner Trucking filed an answer asserting that Smith failed to state a claim upon which relief could be granted under Groves v. Taylor, 729 N.E.2d 569 (Ind. 2000). Both defendants moved in federal court for summary judgment, arguing that as a matter of law Smith could not bring a bystander claim for negligent infliction of emotional distress under Groves because Smith's relationship with Welch was not "analogous" to that of a spouse and Smith did not come upon the scene of the accident "soon after the death." The district court denied the motion for summary judgment without prejudice and certified the above questions to this Court.

## I. Temporal and Relationship Determinations Under Groves

The test announced in Groves for bystander recovery for negligent infliction of emotional distress sets requirements of relationship between the parties and proximity of the plaintiff to the scene. We have not addressed whether these are questions of law or fact or mixed questions of law and fact. For the reasons given below, we conclude that both the relationship and proximity requirements under Groves are issues of law.

For over a century, Indiana law allowed damages for negligent infliction of emotional distress only when the distress was accompanied by and resulted from a physical injury caused by an impact to the person seeking recovery. Shuamber v. Henderson, 579 N.E.2d 452, 454 (Ind. 1991) (citing N.Y., Chi. & St. Louis R.R. Co. v. Henderson, 237 Ind. 456, 477, 146 N.E.2d 531, 543 (1957); Boston v. Chesapeake & Ohio Ry. Co., 233 Ind. 425, 428-29, 61 N.E.2d 326,

3

327 (1945); Indianapolis St. Ry. Co. v. Ray, 167 Ind. 236, 245-46, 78 N.E. 978, 980 (1906)). This requirement of both impact and physical injury is known as the traditional "impact rule." See, e.g., Bader v. Johnson, 732 N.E.2d 1212, 1221 (Ind. 2000); Lachenman v. Stice, 838 N.E.2d 451, 457 (Ind. Ct. App. 2005), trans. denied, 855 N.E.2d 1008 (Ind. 2006).

Since 1991, this Court has allowed recovery for negligent infliction of emotional distress under some circumstances where the traditional "impact rule" is not satisfied. Shuamber, 579 N.E.2d at 456; see also Groves, 729 N.E.2d at 573. In Shuamber, we adopted a "modified impact rule" that required impact but not necessarily physical injury:

> [w]hen . . . a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, . . . such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

579 N.E.2d at 456. In Groves, we allowed bystander recovery of damages for negligent infliction of emotional distress based on "direct involvement" with the accident:

> a bystander may . . . establish "direct involvement" by proving that the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortuous [sic] conduct.

729 N.E.2d at 573. This has been referred to as the "bystander" or "relative bystander" rule. E.g., Lachenman, 838 N.E.2d at 458.

Groves followed Bowen v. Lumbermens Mutual Casualty Co., 517 N.W.2d 432 (Wis. 1994) in adopting this test. 729 N.E.2d at 572. In Bowen, the Wisconsin Supreme Court held that the plaintiff's complaint had set forth the requirements for recovery damages for negligent infliction of emotional distress, namely, negligent conduct, causation, and injury. 517 N.W.2d at 443. The court then noted that it did not necessarily follow that the claim must be allowed to go forward. Id. "A court may decide, as a matter of law, that considerations of public policy require dismissal of the claim." Id. The Bowen court pointed out that public policy considerations

4

were "an aspect of legal cause" and that the "application of public policy considerations is a function *solely* of the court." Id. (emphasis added).

Bowen explained that recovery for negligent infliction of emotional distress raised two concerns: "(1) establishing authenticity of the claim and (2) ensuring fairness of the financial burden placed upon a defendant whose conduct was negligent." Id. The court set forth the public policy considerations that underlie these concerns:

> (1) whether the injury is too remote from the negligence; (2) whether the injury is wholly out of proportion to the culpability of the negligent tortfeasor; (3) whether in retrospect it appears too extraordinary that the negligence should have brought about the harm; (4) whether allowance of recovery would place an unreasonable burden on the negligent tortfeasor; (5) whether allowance of recovery would be too likely to open the way to fraudulent claims; [and] (6) whether allowance of recovery would enter a field that has no sensible or just stopping point.

Id. at 444. Bowen took the view that a court should consider three factors in determining on the basis of public policy whether to preclude liability for bystander recovery for negligent infliction of emotional distress. These were the severity of the victim's injury, the relationship of the plaintiff to the victim, and circumstances surrounding the plaintiff's discovery of the victim's injury. As Bowen explained, "[t]hese factors relate to the underlying principles of the tort; they are relevant to measuring the authenticity of the claim and the limits of liability for emotional harm resulting from a defendant's negligence." Id. at 445-46. We think this approach is consistent with the basic concerns that have historically limited recovery for negligent infliction of emotional distress.

We agree with Bowen that these factors present issues of law. Id. at 443-46. Rules of law are designed to promote consistency and predictability. See generally MacLafferty v. MacLafferty, 829 N.E.2d 938, 941 (Ind. 2005). In Groves, we noted that the three criteria from Bowen "provide a . . . basis for distinguishing legitimate claims of emotional distress from the mere spurious." Groves, 729 N.E.2d at 572. These criteria are derived from the public policy considerations that underlie and define a claim for negligent infliction of emotional distress. They therefore are issues of law for a court to resolve.

5

## II. Applying Groves

We now turn to the questions of (1) whether a fiancée is an "analogous" relationship as that term is used in Groves and (2) whether "soon after the death of a loved one" is a matter of time alone or also of circumstances.

### A. *"Analogous to a Spouse"*

The certified question asks whether a fiancée qualifies as a relationship that is analogous to a spouse under Indiana's "bystander" rule announced in Groves. This Court has not considered the "analogous to a spouse" language under Groves. Smith urges us to follow courts that have allowed recovery for bystander negligent infliction of emotional distress by those who are engaged to be married. E.g., Graves v. Estabrook, 818 A.2d 1255 (N.H. 2003); Dunphy v. Gregor, 642 A.2d 372 (N.J. 1994). For the reasons explained below, we decline to do so and hold that a fiancée is not "analogous to a spouse" under Groves.

Most courts that have considered this issue have disallowed bystander recovery for negligent infliction of emotional distress by persons engaged to be married or involved in cohabiting[1] but unmarried relationships.[2] Cases have cited three major policy reasons in rejecting claims for bystander recovery of negligent infliction of emotional distress by unmarried cohabitants or engaged persons: (1) promoting the strong state interest in the marriage relationship; (2) preventing an unreasonable burden on the courts; and (3) limiting the number of persons to whom a neg-

---

[1] We do not suggest that Welch and Smith were cohabiting partners. We mention cohabiting relationships because several jurisdictions have considered bystander claims on those facts, and we find their analyses on the subject equally applicable to engaged persons living separately.

[2] E.g., Lindsey v. Visitec, Inc., 804 F. Supp. 1340 (W.D. Wash. 1992) (applying Washington law and denying recovery to fiancée); Sollars v. City of Albuquerque, 794 F. Supp. 360 (D.N.M. 1992) (denying recovery to unmarried cohabiting partner); Elden v. Sheldon, 758 P.2d 582 (Cal. 1988) (same); Biercevicz v. Liberty Mut. Ins. Co., 865 A.2d 1267 (Conn. Super. Ct. 2004) (denying recovery to fiancé); Cambareri v. Glock, Inc., No. CV94 0136659, 1994 WL 240453 (Conn. Super. Ct. 1994) (unpublished opinion) (same); Grotts v. Zahner, 989 P.2d 415 (Nev. 1999) (denying recovery to fiancée). Although not specifically confronting whether engaged persons or unmarried cohabiting partners can recover for bystander negligent infliction of emotional distress, statements from many cases indicate that recovery would be denied for engaged persons or unmarried cohabiting partners. E.g., Nugent v. Bauermeister, 489 N.W.2d 148, 150 (Mich. Ct. App. 1992) ("[A] plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person only if the plaintiff is an immediate member of the victim's family."); Trombetta v. Conkling, 626 N.E.2d 653, 654 (N.Y. 1993) ("Recovery of damages by bystanders for the negligent infliction of emotional distress should be limited only to the immediate family." (citation omitted)).

ligent defendant owes a duty of care. E.g., Elden v. Sheldon, 758 P.2d 582, 586-88 (Cal. 1988). We agree with that result, if not all the rationales offered to support it.

First, marriage affords a bright line and is often adopted by the legislature in defining permissible tort recovery. Indiana's wrongful death statute does not permit a fiancé to recover for the death of his betrothed no matter how grievous the injury. Manczunski v. Frye, 689 N.E.2d 473 (Ind. Ct. App. 1997) (evaluating the effective wrongful death statute at the time, Indiana Code section 34-1-1-2, now Indiana Code section 34-23-1-1 (2004)), trans. denied. Spouses are the only non-blood relatives who inherit by way of intestate succession. I.C. § 29-1-2-1. Cohabiting partners without subsequent marriage, regardless of whether they are engaged at the time, are not presumed to intend to share rights to property in the absence of an express contract or a viable equitable theory. Bright v. Kuehl, 650 N.E.2d 311, 315 (Ind. Ct. App. 1995). Spousal privilege is limited to those who maintain a legally recognized marriage, and we have expressly refused to extend the spousal privilege to engaged couples. Holt v. State, 481 N.E.2d 1324, 1326 (Ind. 1985). And, of course, marriage imposes a legal duty of support as well as privileges. Drawing a bright-line distinction in the context of bystander recovery for negligent infliction of emotional distress between spouses and engaged couples recognizes these different legal duties and responsibilities.

Second, drawing the line at marriage for "bystander" claims of negligent infliction of emotional distress avoids the need to explore the intimate details of a relationship that a claimant asserts is "analogous" to marriage. Engagement is not always easily and credibly established, and even if it is, it can be questioned or revoked without any formal process. We acknowledge that engaged persons may feel as much emotional trauma from witnessing the injury of their partner as would a spouse. But there are many arrangements that could be claimed to be engagements, or their equivalents. Courts would be forced to evaluate and rank a variety of personal relationships even though the quality of those relationship would turn on factors not readily knowable. Dunphy, 642 A.2d at 384 (Garibaldi, J., dissenting); Biercevicz v. Liberty Mut. Ins. Co., 865 A.2d 1267, 1271 (Conn. Super. Ct. 2004). Moreover, defendants would be at a serious disadvantage because the only person in a position to know the true intimate details of the relationship will be the surviving claimant asserting the "bystander" claim. Dunphy, 642 A.2d at 383.

7

Third, and equally important, limiting defendants' liability to spouses addresses the need to limit the array of persons to whom a negligent defendant is potentially liable.

> [I]f recovery [for mental distress] is to be permitted, there must be some limitation. It would be an entirely unreasonable burden on all human activity if the defendant who has endangered one man were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as his friends. And obviously the danger of fictitious claims, and the necessity of some guarantee of genuineness, are even greater here than before.

Elden, 758 P.2d at 588 (alterations in original) (quoting Prosser, Law of Torts (3d ed. 1964) § 55, at 353-54). Drawing bright line rules is especially important for claims of emotional distress because there is virtually no limit to the number of potential claimants. Smith is correct in contending that limiting "bystander" recovery to spouses is somewhat arbitrary. But "a certain degree of arbitrariness is necessary in setting the outer limits of tort liability in general and in setting the outer limits of liability in the field of emotional distress in particular." Dunphy, 642 A.2d at 381 (Garibaldi, J., dissenting). For these reasons, we recently rejected abandoning the impact rule for emotional distress damages, noting "the potential for a flood of trivial suits," "the possibility of fraudulent claims that are difficult for judges and juries to detect," and the result of "unlimited and unpredictable liability." Atl. Coast Airlines v. Cook, 857 N.E.2d 989, 997 (Ind. 2006).

B. *"Soon After the Death of a Loved One"*

The issue presented is whether the proximity determination from Groves—whether a plaintiff "came on the scene soon after the death of a loved one"—is a matter of time alone or also of circumstances. This Court has yet to expound on this requirement under Groves. For the reasons explained below, we conclude that the proximity requirement under Groves is both a matter of time and circumstances.

As stated earlier, Groves essentially followed Bowen in adopting a "relative bystander" rule for negligent infliction of emotional distress. Bowen expressed the limitations as permitting recovery only by claimants who witnessed the accident or experienced the "gruesome aftermath" of the accident "minutes" after the accident occurred with the victim at the scene. 517 N.W.2d at 445. Bowen explained that drawing a line was necessary because witnessing such an incident

8

was "distinct" from learning of a victim's death or injury indirectly.[3]  Id.  Subsequent cases discussing this Bowen requirement noted that emotional trauma arising from learning of a loved one's death through indirect means could be devastating but also observed that every person could be expected at some point to learn of the death or serious injury of a loved one through indirect means.  "Bystander" claims are not meant to compensate every emotional trauma.  Rather they are limited to those that arise from the shock of experiencing the traumatic event.  Finnegan ex. rel. Skoglind v. Wis. Patients Comp. Fund, 666 N.W.2d 797, 805 (Wis. 2003); Rosin v. Fort Howard Corp., 588 N.W.2d 58, 61-62 (Wis. Ct. App. 1998).  These cases pointed out that this temporal requirement guaranteed the genuineness of the claim and assured that recovery would not unreasonably burden the defendant—the two major public policy concerns of "bystander" claims set forth in Bowen.  Finnegan, 666 N.W.2d at 802-03; Rosin, 588 N.W.2d at 61.  In Groves the facts were such that one who arrived "soon" after the accident necessarily viewed "the gruesome aftermath."  But we think the requirement of bystander recovery is both temporal—at or immediately following the incident—and also circumstantial.  The scene viewed by the claimant must be essentially as it was at the time of the incident, the victim must be in essentially the same condition as immediately following the incident, and the claimant must not have been informed of the incident before coming upon the scene.

**Conclusion**

In summary, we find that (1) the temporal and relationship determinations under Groves are questions of law; (2) a fiancée is not "analogous to a spouse" under Groves; and (3) "soon after the death of a loved one" is a matter of both time and circumstances.

---

[3] Many other jurisdictions have a similar requirement for their "bystander" claims of negligent infliction of emotional distress.  E.g., Beck v. State, Dept. of Transp. & Pub. Facilities, 837 P.2d 105, 110 (Alaska 1992) (finding that a plaintiff is allowed to assert a claim for negligent infliction of emotional distress where "the plaintiff experiences shock as the result of a sudden sensory observation of a loved one's serious injuries during an uninterrupted flow of events following 'closely on the heels of the accident'"); Heggel v. McMahon, 960 P.2d 424, 429 (Wash. 1998) (finding that a plaintiff "may recover for emotional distress caused by observing an injured relative at the scene of an accident after its occurrence and before there is substantial change in the relative's condition or location"); Contreras v. Carbon County Sch. Dist. No. 2, 843 P.2d 589, 594 (Wyo. 1992) (allowing plaintiff to recover assert "bystander" claim if plaintiff "observes the injury shortly after it occurs without material change in the attendant circumstances").  Other jurisdictions are less lenient and allow recovery only if the claimant contemporaneously observed the traumatic event.  E.g., Thing v. LaChusa, 771 P.2d 814, 830 (Cal. 1989).

Shepard, C.J., and Dickson, J., concur.

Sullivan, J., concurs in result with separate opinion in which Rucker, J., concurs.

**Sullivan, Justice, concurring in result.**

I agree that Eli Welch, the plaintiff Amy Smith's fiancé, was not in a "relationship to the plaintiff analogous to a spouse" and therefore is not entitled to recover under our <u>Groves v. Taylor</u> precedent. As a couple engaged to be married, their relationship had not been legally established by license or ceremony nor was it one of long duration marked by the financial interdependence, intimacy, and other characteristics of the spousal relationship. The majority opinion makes clear that Welch and Smith were not involved in a cohabiting but unmarried relationship. As such, its comments with respect to relationships other than the fiancé-fiancée relationship at issue here are unnecessary to the decision in this case and therefore not precedential.

Rucker, J., concurs.