IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 12, 2023 Session

## JOHN DOE ET AL. v. BELLEVUE BAPTIST CHURCH

**Appeal from the Circuit Court for Shelby County**
**No. CT-1556-20      Jerry Stokes, Judge**
_____

**No. W2022-01350-COA-R3-CV**
_____

The parents of a child brought suit to personally recover for negligent infliction of emotional distress in relation to sexual abuse of their child that had been perpetrated by the defendant church's former paid volunteer coordinator. The church filed a motion to dismiss the parents' claims and argued that the parents' attempt to recover for negligent infliction of emotional distress was not legally cognizable because the parents did not perceive any injury-producing event. The trial court countenanced this position and entered an order dismissing the parents' claims. The parents then filed a motion seeking relief from the dismissal order and, alternatively, to amend their complaint. The trial court ultimately denied the parents' motion, following which the present appeal ensued. For the reasons stated herein, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and CARMA DENNIS MCGEE, JJ., joined.

Gary K. Smith and Karen M. Campbell, Memphis, Tennessee, for the appellants, John Doe and Jane Doe.

William R. Johnson, Brentwood, Tennessee, for the appellee, Bellevue Baptist Church.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

The Appellants in this appeal, hereinafter referred to as "the Parents," commenced litigation in the trial court alleging that James Hook ("Mr. Hook"), a former paid volunteer coordinator at Bellevue Baptist Church ("Bellevue"), had perpetrated "extended horrific

acts of sexual abuse" on their minor daughter ("the Child"). In addition to asserting several claims against Bellevue on behalf of the Child concerning this abuse, the Parents brought their own individual claims against Bellevue for negligent infliction of emotional distress ("NIED"). According to the complaint, Bellevue "knew or should have known that Hook was spending too much time with certain minors" and "failed to investigate and prevent Hook from creating opportunities for Hook to be alone with [the Child]." The claims asserted on behalf of the Child, which have now been resolved, are not at issue in this appeal.

The complaint details how Mr. Hook encouraged the Child, then fifteen years old, to volunteer at Bellevue on Sundays and Wednesdays and how he began showing her particular attention during her volunteer sessions. Concerning the later abuse committed by Mr. Hook against the Child on Wednesday nights, the complaint alleges as follows:

> 38. James Hook took his older children to Bellevue Baptist on Wednesday nights and dropped them off in another part of the children's area. Hook would then go to the room where [the Child] was working to stop by to say "hi." After talking with her for a short time, he would convince [the Child] to leave with him. No adult there ever questioned this or prevented him from taking [the Child] from the area.

> 39. After leaving the child care area, Hook, then 43 years old, took [the Child], 15, to other areas on the Bellevue campus including the Pavilion and outdoor bathrooms where he kissed her and had other physical contact with her. Hook would return [the Child] to the child care area before the Wednesday night program was ended.

Although the complaint notes that the Child stopped volunteering at the Wednesday night program in approximately April 2019, it avers that the abuse by Mr. Hook continued, stating as follows:

> Hook convinced [the Child] to repeatedly sneak out of her home in the middle of the night and he began picking her up and taking her to a park where he continued to assault her. This occurred numerous times. After these encounters, Hook would drop [the Child] off a mile away from her home where she would have to walk back early in the morning.

According to the complaint, however, law enforcement discovered Mr. Hook and the Child at a park in the back of Mr. Hook's vehicle on May 5, 2019, allegedly involved in acts of intimacy. Mr. Hook was arrested and eventually pled guilty to "sexual battery by an authority figure."

Notably, in outlining these various instances of abuse, the complaint does not assert

any facts pointing to the Parents' direct observation of Mr. Hook's abuse, nor does the complaint allege any facts depicting the Parents' arrival at any of the scenes of abuse in the aftermath before the scenes were materially altered.[1]  As discussed below, the absence of such allegations has proven to be a significant point of contention among the parties in this case.

Subsequent to the filing of the lawsuit against it, Bellevue moved to dismiss the Parents' NIED claims, specifically arguing in a contemporaneously-filed supporting memorandum that the Parents "failed to allege any facts to support a claim for NIED."  In pertinent part, Bellevue noted that "[the Parents] did not witness Mr. Hook sexually abusing their daughter" and "did not perceive any injury producing event."  A hearing was later held on Bellevue's motion to dismiss, and the trial court ultimately agreed that the Parents' lack of perception was fatal to their NIED claims, stating as follows in its oral ruling:

> [I]n terms of being able to perceive what this child has gone through having witnessed any parts of it, I don't see anything in the Complaint that suggests that the parents did.  . . . I have to look at the Complaint, and based on what's been alleged I don't see that the parents have witnessed anything, observed anything, suspected anything.  So they have no sensory perception of what may have been going on to lead them to have a claim for NIED.
>
> So I'm going to grant the motion to dismiss as to the parents' claim[.]

A written order dismissing the Parents' claims was later entered on November 10, 2020.  At the time, the Child's claims remained outstanding, and the trial court denied a subsequent request by Bellevue that the dismissal order concerning the Parents' claims be certified as a final judgment.

Litigation in the case continued, and on April 19, 2022, a Rule 31 mediator filed a report regarding mediation that had taken place the prior month and stated that all matters concerning the Child were resolved "pending approval" by the trial court.  Subsequently, on June 15, 2022, the Parents filed a motion seeking relief from the November 10, 2020, dismissal order pursuant to Rules 54.02 and 60.02 of the Tennessee Rules of Civil Procedure and, alternatively, to amend their complaint pursuant to Rule 15 of the Tennessee Rules of Civil Procedure.  As a basis for their motion, the Parents asserted that new evidence from depositions taken in January 2022 revealed that Bellevue had been on notice of suspicious behavior of Mr. Hook in February 2019 but nonetheless had failed to warn them.

---

[1] The Parents' principal brief itself acknowledges that "[the Parents] were totally unaware of what was occurring until Hook was caught on May 5, 2019 and arrested."

Bellevue opposed the Parents' motion, arguing in pertinent part that there were no valid grounds for the court to reconsider its order, that there was no evidence that the Parents had any sensory perception of any alleged injury to the Child, and that there was no basis for the Parents to "allege another negligence claim, purportedly not NIED," multiple months after discovery of the new evidence. In an ensuing hearing on the motion, the trial court signaled its agreement with Bellevue's position, stating as follows: "[A]fter looking at everything that's been submitted and looking at the existing case law, I see no basis for reopening the same claims but naming it failure to warn in this instance." Later, in an order entered on August 29, 2022, the trial court denied the Parents' motion to amend, denied relief from the order of dismissal regarding their NIED claims, and formally dismissed the case as to all Plaintiffs, specifically noting in connection therewith that the case as to the Child was resolved. This appeal followed.

## ISSUES PRESENTED

In their appellate brief, the Parents initially raise the issue of whether the trial court erred in dismissing their claims for NIED "based upon learning that their daughter had been sexually assaulted by a former employee of [Bellevue]." They also raise the issue of whether the trial court erred in "denying [their] Motion to reconsider the Motion to Dismiss . . . under Tenn. R. Civ. P. 54.02 and 60.02(5) or in the alternative to allow [them] to amend the complaint under Tenn. R. Civ. P. 15."

For its part, Bellevue does not seek any relief from the trial court's judgment and requests that we affirm the trial court's orders in light of existing precedent.

## STANDARD OF REVIEW

As noted above, the Parents challenge the propriety of the trial court's dismissal of their NIED claims upon Bellevue's motion to dismiss for failure to state a claim, while also raising the question of whether the trial court erred in denying their motion seeking relief from the dismissal order and, alternatively, to amend their complaint. Whereas we review the first of these issues de novo, with no presumption of correctness, we review the latter matters for an abuse of discretion. *See Khan v. Regions Bank*, 572 S.W.3d 189, 194 (Tenn. Ct. App. 2018) ("A trial court's decision to grant a Rule 12.02(6) motion to dismiss is a question of law that we review de novo with no presumption of correctness."); *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012) (noting that motions to revise under Rule 54.02 and motions for relief under Rule 60.02 are both reviewed for an abuse of discretion); *Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 741 (Tenn. 2013) ("Trial courts have broad authority to decide motions to amend pleadings and will not be reversed absent an abuse of discretion."). Regarding Bellevue's motion to dismiss, we note that "[a] Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The resolution of the

- 4 -

motion is determined by an examination of the pleadings alone. *Id.* When a trial court decides whether to grant leave to amend a complaint, pertinent factors to consider include whether there has been an undue delay in filing and whether there is futility of amendment. *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 42 (Tenn. Ct. App. 2006).

**DISCUSSION**

This Court has noted that a claim for NIED is simply "an avenue for a plaintiff to recover for emotional injuries that result from another's negligence." *Henderson v. Vanderbilt Univ.*, 534 S.W.3d 426, 432 (Tenn. Ct. App. 2017). Indeed, the elements of a NIED claim "include the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012). Nonetheless, the law surrounding NIED claims has been described as "murky and difficult," *Henderson*, 534 S.W.3d at 432, and it has been subject to various developments over the years. One of the recognized types of NIED claims addresses situations where "the plaintiff suffers emotional injury because the negligence of another caused an injury or death to a third person and that in turn caused emotional injury to the plaintiff." *Id.* at 438 (quoting John A. Day, *NIED Claims After* Flax *and* Eskin, 45 Tenn. B.J. 33 (Jan. 2009)). Such "bystander" claims may be further divided into additional categories, including a category of claims in which one "witnesses the aftermath of the scene within a very short period of time after the injury-producing event had already occurred." *Id.*

As is relevant here, the Tennessee Supreme Court has instructed that a claim for NIED requires proof of the following elements "[w]hen a plaintiff did not witness the injury-producing event":

> (1) the actual or apparent death or serious physical injury of another caused by the defendant's negligence, (2) the existence of a close and intimate personal relationship between the plaintiff and the deceased or injured person, (3) **the plaintiff's observation of the actual or apparent death or serious physical injury at the scene of the accident before the scene has been materially altered**, and (4) the resulting serious or severe emotional injury to the plaintiff caused by the observation of the death or injury.

*Eskin v. Bartee*, 262 S.W.3d 727, 739 (Tenn. 2008) (emphasis added). As should be evident from our initial exposition in this Opinion, it is the bolded element above that is at issue here. Moreover, as reflected in the trial court's disposition and as we now confirm from our own review of the complaint, it is clear that allegations for legally cognizable NIED claims for the Parents are absent. Indeed, the complaint does not even allege any sensory perception by the Parents of the abuse of the Child or of any of the aftermath of the scenes of abuse before they were materially altered. Under the precedent established by the Tennessee Supreme Court, we are therefore compelled to conclude that the Parents'

NIED claims were properly dismissed by the trial court.[2]

At certain places in their principal appellate brief, the Parents appear to acknowledge that the existing case law could serve as a barrier to recovery on their NIED claims, variously arguing that the law "*should* certainly apply to such claims to provide relief" and also that, to the extent there is a requirement that they have some type of sensory perception of the injury-producing event, there is "a good faith argument for the reversal or modification of existing law." (emphasis added)  In support of their efforts to secure a reversal of the trial court's judgment, they point to case law in other jurisdictions.  Among other cases, the Parents cite prominently to the Indiana Supreme Court's decision in *K.G. by Next Friend Ruch v. Smith*, 178 N.E.3d 300 (Ind. 2021), a case in which the Indiana Supreme Court carved out an exception to the proximity requirement governing bystander NIED claims in the state.  In pertinent part, the majority opinion in the *K.G.* case held that "when a caretaker assumes responsibility for a child, and when that caretaker owes a duty of care to the child's parent or guardian, a claim against the caretaker for the negligent infliction of emotional distress may proceed when the parent or guardian later discovers, with irrefutable certainty, that the caretaker sexually abused that child and when that abuse severely impacted the parent or guardian's emotional health."  *Id.* at 308.  Although the majority opinion stated that it was not the first state to eliminate a proximity requirement when a case involved the sexual abuse of a child, it also transparently observed that the "tide of precedent tends to flow in the opposite direction," *id.* at 310, adding as follows: "At the end of the day, we acknowledge that most states have refrained from disposing of a proximity requirement."  *Id.* at 311.

In a dissenting opinion in the *K.G.* case, in which another justice joined, it was pointed out that the majority opinion not only represented the minority view, but also that it created unequal results.  In relevant part, the dissenting opinion noted as follows:

> Though our emotional-distress doctrine has evolved over the past 125 years, as the Court recounts, a core principle had remained unchanged throughout

---

[2] The Tennessee Supreme Court's decision in *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22 (Tenn. 2005), which was cited in the Parents' brief and was invoked by their counsel at the oral argument of this matter, does not in any way direct a contrary conclusion.  Although the Supreme Court held in that case that conduct does not need to be directed at a specific person or to have occurred in the presence of the plaintiff to be actionable, such a holding was in specific relation to the sufficiency of a claim for *reckless* infliction of emotional distress, the elements of which the Supreme Court noted already placed significant limitations on recovery and "perform[ed] an important gatekeeping function . . . of preventing liability from extending unreasonably."  *Id.* at 38-39.  Within a footnote, the Supreme Court expressly noted that "[c]auses of action in Tennessee for intentional, reckless and negligent infliction of emotional distress retain respectively distinct and logically appropriate requirements and burdens."  *Id.* at 40 n.31.  Moreover, it should be noted that *Eskin*, the aforecited Supreme Court opinion requiring "the plaintiff's observation of the actual or apparent death or serious physical injury at the scene of the accident before the scene has been materially altered," *see Eskin*, 262 S.W.3d at 739, was issued in 2008, after the *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville* decision.

- 6 -

that time—until today. That principle required a claimant seeking emotional-distress damages to have witnessed the tortious conduct and resulting injury directly as they occurred or in their immediate aftermath. But this requirement of temporal and physical proximity is missing here. The mother did not observe her daughter's sexual abuse or even learn of it until years later. Thus, the Court must fashion a new rule to revive her claim, but this new rule creates an unequal result. It permits recovery for a mother who did not witness her child's sexual abuse, but denies recovery to a father, whose emotional distress was equally sincere, when his son died in a car accident. See *Clifton v. McCammack*, 43 N.E.3d 213 (Ind. 2015).[3] Because "every person could be expected at some point to learn of the death or serious injury of a loved one through indirect means", *Smith v. Toney*, 862 N.E.2d 656, 663 (Ind. 2007), "[t]here must be a point at which a defendant's exposure to liability for negligent infliction of emotional distress ends", *Clifton*, 43 N.E.3d at 223.

*Id.* at 314-15 (Slaughter, J., dissenting). The dissenting opinion also questioned "what principle justifies drawing the line here and not elsewhere?" and pondered whether the majority's change in the law was the "proverbial camel's nose under the tent, with the rest of the camel soon to follow." *Id.* at 315 (Slaughter, J., dissenting).

Although the Parents, no doubt, find the general approach taken by the majority opinion in *K.G.* to be supportive of their claims and submit that this case is a "prime opportunity" to authorize recovery in their favor, respectfully, we are bound by the contours of NIED law as defined by our own state's highest court. To that end, we note again that the Tennessee Supreme Court has announced that, "[w]hen a plaintiff did not witness the injury-producing event," one of the essential elements of a NIED claim is "the plaintiff's observation of the actual or apparent death or serious physical injury at the scene of the accident before the scene has been materially altered." *Eskin*, 262 S.W.3d at 739. We recognized this element of the law as recently as last year. *See Cothran v. Durham Sch. Servs., L.P.*, 666 S.W.3d 369, 376 (Tenn. Ct. App. 2022) (quoting from *Eskin*). While we, like the court in *Clifton*, do not intend to trivialize the Parents' claims of distress in this case, we must follow the existing established precedent in this state governing NIED claims. In doing so, and because NIED claims satisfying all of the requisite elements required by the precedents in this jurisdiction have not been asserted by the Parents here, we affirm the trial court's dismissal.

Moreover, in affirming the trial court's judgment of dismissal in this case, we

---

[3] In the referenced *Clifton* decision, the Indiana Supreme Court, although denying NIED recovery to a father in that case, hastened to add that it recognized that genuine emotional distress can certainly occur even after an accident, that it was not trivializing the emotional trauma that occurs, and that it had previously been "well aware that emotional trauma would still befall an immediate family member who arrived to an accident scene after the victim or scene had materially changed." *Clifton*, 43 N.E.3d at 222.

discern no abuse of discretion in the trial court's denial of the Parents' motion that sought relief under Rule 54.02 or Rule 60.02,[4] or in the court's denial of that motion's additional request to amend the complaint. Although the Parents have argued that evidence from January 2022 depositions justified relief from the trial court's dismissal order, as well as an amendment to their complaint, Bellevue has noted that "even with the new allegations [concerning Bellevue's notice of suspicious behavior of Mr. Hook in February 2019] . . . there is no allegation of contemporaneous awareness, or presence at the scene." Indeed, although the Parents attempt to recover for emotional harm as a result of learning that the Child was abused, there still remains an absence of any assertions sufficient to establish any form of sensory observation at the scenes of abuse, whether in the aftermath of the abuse or otherwise.

## CONCLUSION

Although the facts outlined in this case pertaining to Mr. Hook's abuse of the Child are deplorable, we are compelled to conclude that existing precedent does not support recovery for the Parents in their pursuit of damages for their own emotional distress. If there is to be a change in the law to accommodate the claims at issue here under these types of circumstances, we respectfully submit that such a decision is the province of the Tennessee Supreme Court. For these reasons, and in light of the foregoing discussion, we affirm the judgment of the trial court.

_s/ Arnold B. Goldin_
ARNOLD B. GOLDIN, JUDGE

---

[4] Inasmuch as the order that the Parents sought relief from was not final when their motion seeking relief was filed, analytically the Parents' motion is technically properly analyzed as a Rule 54.02 motion to revise as opposed to a Rule 60.02 motion. *Compare Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn. 2000) (noting that Rule 54.02 addresses interlocutory orders), *with DeLong v. Vanderbilt Univ.*, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005) ("Tenn. R. Civ. P. 60.02 provides an exceptional remedy that enables parties to obtain relief from a final judgment.").